**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**ZAKIAH RAHMAN**                                                                 **CIVIL ACTION NO.**

**VERSUS**                                                                                  **22-799-JWD-EWD**

**TRISURA SPECIALTY**
**INSURANCE COMPANY, ET AL.**

      Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

      Signed in Baton Rouge, Louisiana, July 31, 2023.

                                                **ERIN WILDER-DOOMES**
                                                **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ZAKIAH RAHMAN                                                                CIVIL ACTION NO.

VERSUS                                                                            22-799-JWD-EWD

TRISURA SPECIALTY
INSURANCE COMPANY, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Based on this Court's independent obligation to ensure its own subject matter jurisdiction, it is recommended[1] that this suit be remanded to the Twenty-Third Judicial District for the Parish of Ascension, State of Louisiana on the Court's own motion for lack of jurisdiction. Specifically, the removing defendant, Corey Ahlberg ("Ahlberg"), has not established that the parties are completely diverse or that the amount in controversy likely exceeds the jurisdictional threshold to exercise federal jurisdiction under 28 U.S.C. § 1332.

### I. BACKGROUND

This is a civil action involving claims for damages allegedly sustained by Plaintiff Zakiah Rahman ("Plaintiff") because of an August 12, 2021 motor vehicle collision.[2] Plaintiff claims that she was injured when a vehicle driven by Ahlberg struck the rear of the vehicle Plaintiff was driving.[3] Plaintiff also claims: (1) that Ahlberg was in the course and scope of his employment with Defendant TrueNorth Transportation Co. ("TrueNorth"), (2) that TrueNorth owned the vehicle driven by Ahlberg, and (3) that Defendant Trisura Specialty Insurance Company ("Trisura") insured TrueNorth and/or Ahlberg at the time of the collision.[4] On August 3, 2022,

---

[1] The Fifth Circuit has held that a "motion to remand is a dispositive matter on which a magistrate should enter a recommendation to the district court subject to de novo review." *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016).
[2] R. Doc. 1-2.
[3] R. Doc. 1-2, ¶¶ 2-5.
[4] R. Doc. 1-2, ¶¶ 7, 10. Ahlberg, TrueNorth, and Trisura are collectively referred to as "Defendants."

Plaintiff filed a Petition for Damages against Defendants in the Twenty-Third Judicial District Court for the Parish of Ascension, State of Louisiana.[5] Ahlberg removed the suit to this Court on October 17, 2022, asserting federal subject matter jurisdiction under 28 U.S.C. § 1332 because "complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs."[6] TrueNorth and Trisura consented to Ahlberg's removal.[7]

After removal, Trisura and TrueNorth answered Plaintiff's Petition.[8] Plaintiff, TrueNorth, and Trisura also filed a Joint Status Report, which states, in relevant part, "Jurisdiction is based on 28 U.S.C. Section 1332, as complete diversity exists between the parties with the matter in controversy exceeding $75,000, exclusive of interests and costs."[9]

## II.  LAW AND ANALYSIS

### A.  Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[10] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[11] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[12] The removal statute, 28 U.S.C. § 1441, is strictly

---

[5] R. Doc. 1-2, p. 1.
[6] R. Doc. 1, p .1.
[7] R. Doc. 1-7.
[8] R. Doc. 5. Although he removed this matter to this Court, there is no service information as to Ahlberg, and he has not filed an answer or other responsive pleading to Plaintiff's Petition, nor has he filed any motion under Fed. R. Civ. P. 12. Likewise, it does not appear that he participated in the preparation of the Joint Status Report.
[9] R. Doc. 11, at § A.
[10] 28 U.S.C. § 1441(a).
[11] 28 U.S.C. § 1332(a)-(a)(1).
[12] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

2

construed and any doubt as to the propriety of removal should be resolved in favor of remand.[13] The removing party has the burden of proving federal diversity jurisdiction.[14] Remand is proper if at any time the court lacks subject matter jurisdiction.[15] The Court has a duty to raise the issue of jurisdiction *sua sponte*.[16]

### B.    Ahlberg Has Not Established that the Parties are Completely Diverse

In the Notice of Removal, Ahlberg alleges (1) that Plaintiff is a citizen of Louisiana, (2) that Trisura is an Oklahoma corporation with its principal place of business in Oklahoma, and (3) that TrueNorth is a Delaware corporation with its principal place of business in Texas.[17] These allegations are sufficient for diversity purposes.[18] Based on these allegations, Ahlberg asserts that complete diversity exists under § 1332 because "Plaintiff is a citizen of the State of Louisiana and the Defendants are citizen[s] of the State of Oklahoma, Delaware and Texas."[19] Problematically, though, the Notice of Removal does not contain any information as to Ahlberg's citizenship,[20] and the Petition is of no help because it simply alleges Ahlberg's residency.[21] Further, in connection with the Notice of Removal, Ahlberg filed a Declaration, stating that he "previously lived at 4418

---

[13] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). ("Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'"); *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008), quoting *In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).
[14] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[15] *See* 28 U.S.C. § 1447(c).
[16] *Richard v. USAA Casualty Insurance Company,* No. 17-175, 2017 WL 8944429 (M.D. La. Nov. 30, 2017), citing *Gonzales v. Thaler*, 565 U.S. 134, 141 (2012).
[17] R. Doc. 1, ¶ XIV.
[18] *See Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (Allegations of residency are not sufficient to establish the citizenship of an individual; rather, "[f]or diversity purposes, citizenship means domicile; mere residence in the State is not sufficient."); 28 U.S.C. § 1332(c)(1); *see also Getty Oil, Div. of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) (In diversity cases involving corporation, "allegations of citizenship must set forth the state of incorporation as well as the principal place of business for each corporation.").
[19] R. Doc. 1, ¶ XV.
[20] *See, generally, id.*
[21] R. Doc. 1-2, ¶ 1(3) (alleging "on information and belief" that Ahlberg is "belie[ved] to be a resident of the full age of majority of the County of Polk, State of Florida."). As explained above, allegations of residency are not sufficient to establish an individual's citizenship of diversity purposes. *See Mas*, 489 F2.d at 1399.

3

Talon Loop in Lakeland, Florida" but "moved" from that address in December 2021 and "did not live" at that address in September 2022 (when Plaintiff attempted to serve him at that address).²² But nothing in Ahlberg's Declaration provides his domicile as is required to establish his citizenship for diversity purposes.²³ Without any allegations whatsoever as to Ahlberg's citizenship or even the information necessary to establish his domicile,²⁴ the Court cannot make the required determination as to whether the parties are completely diversity, and Ahlberg has failed to carry his burden in this regard.

      **C.    Ahlberg Has Also Failed to Carry His Burden of Establishing that the Amount in Controversy Requirement is Met**

Louisiana law prohibits plaintiffs from specifying a monetary amount of damages in their state court petitions.²⁵ When a plaintiff has not alleged a specific amount of damages, a removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.²⁶ The removing party may make this showing either: "(1) by

---

²² *See* R. Doc. 1-4. *See also* R. Doc. 1-3.
²³ R. Doc. 1-4. The Declaration appears to have been filed to support Ahlberg's argument that he has never been served with Plaintiff's Petition and, therefore, that removal was timely. *See* R. Doc. 1, ¶ IV – XII. The Court need not address the merits of these arguments as Plaintiff has not argued that the removal was untimely, such that any argument about timeliness is waived. 28 U.S.C. 1447(c). The lack of perfected service on a defendant named in the original Petition does not alleviate the need for the removing party to allege that unserved defendant's citizenship such that the Court can determine whether complete diversity exists. *See New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998) ("[Defendant's] non-diverse citizenship cannot be ignored simply because he was an unserved defendant…Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined form the fact of citizenship of the parties named and not from the fact of service."). *See also In re Levy*, 52 F.4th 244, 248 (5th Cir. 2022) (discussing the holding in *Deshotel* and explaining that the "ruling in *Deshotel* is absolute and admits of no exceptions."); *Parault v. Insurance Company*, No. 18-1053, 2018 WL 6716695, at *1 (M.D. La. Dec. 20, 2018) ("To the extent the Removing Defendant's position is that the citizenship of an unserved defendant can be disregarded, the Fifth Circuit has held that non-diverse citizenship cannot be ignored simply because [the defendant is] an unserved defendant." (internal citations and quotations omitted).
²⁴ *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) ("A change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely; 13B Wright–Miller–Cooper, Federal Practice and Procedure § 3613 (1984), citing, *inter alia, Stine v. Moore*, 213 F.2d 446 (5th Cir.1954); *Paudler v. Paudler*, 185 F.2d 901 (5th Cir.) cert. denied, 341 U.S. 920, 71 S.Ct. 742 (1950); or, as some courts articulate it, the absence of any intention to go elsewhere. 13B Wright–Miller–Cooper § 3613 n. 3.") While Ahlberg's Declaration indicates that he was no longer residing in Florida in September 2022, it is not clear what his domicile was before that time or whether he changed it.
²⁵ La. Code Civ. P. art. 893(A)(1); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).
²⁶ *Luckett*, 171 F.3d at 298, citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993).

demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'"[27] Once a removing defendant has established that the amount in controversy exceeds the federal jurisdictional amount, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[28]

Here, the Petition contains no statement about the existence, nature, and/or extent of any injury suffered by Plaintiff.[29] Instead, Plaintiff simply claims she "sustained the following non-exclusive elements of damages" because of the collision: (1) Physical pain and suffering (past, present and future); (2) Mental anguish (past, present and future); (3) Loss of enjoyment of life (past, present and future); (4) Disfigurement and disability; (5) Medical Expenses (past, present and future); (6) Lost Wages/Earnings (past, present and future); and (7) Property Damages,"[30] and that the "value" of her claims "exceed[] the amount required to request a trial by jury."[31]

In the Notice of Removal, Ahlberg contends "it is facially apparent from the Petition…that the amount in controversy exceeds $75,000, exclusive of interest and costs."[32] It is not. A Petition devoid of any mention of injury, along with demands for general categories of damages (*e.g.*, physical pain and suffering; mental anguish; loss of enjoyment of life; disfigurement; medical expenses; lost wages/earnings; property damages; etc.)[33] is insufficient to establish the amount in controversy. "Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any

---

[27] *Luckett*, 171 F.3d at 298, quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).
[28] *De Aguilar*, 47 F.3d at 1412.
[29] *See, generally*, R. Doc. 1-2.
[30] R. Doc. 1-2, ¶ 9.
[31] R. Doc. 1-2, ¶ 11.
[32] R. Doc. 1, ¶ XIX.
[33] R. Doc. 1-2, ¶ 9.

5

indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test."[34]

Since it is not facially apparent from the Petition that Plaintiff's damages will exceed the federal jurisdictional amount, the Court must next consider whether Ahlberg has met his burden of proving, through summary judgment-type evidence, that the amount in controversy in this case is likely to exceed $75,000, exclusive of interest and costs. Hedging his bets in this regard, Ahlberg attempts to show that the amount in controversy is satisfied based on the boilerplate damages allegations in the Petition, coupled with (1) information contained in Plaintiff's medical and billing records (which are attached to the Notice of Removal), and (2) "general damage awards from several Louisiana state cases involving cervical spinal discs injuries that did not require surgical intervention which range from $75,000 to $150,000," which, according to Ahlberg does not factor in Plaintiff's claim for medical expenses, lost wages, and property damages.[35] This information is insufficient to meet Ahlberg's burden to establish the requisite amount in controversy.

First, Ahlberg claims in the Notice of Removal that Plaintiff's medical records show: (1) that a cervical MRI "revealed a cervical disc bugle,"[36] (2) that Plaintiff treated at Total Care Injury & Pain Centers ("Total Care") for injuries allegedly sustained in the accident for at least 6 months at a cost of at least $3,990.00," and (3) that "upon information and belief, Plaintiff continues to treat for [her] injuries…including undergoing at least one epidural steroid injection."[37] However,

---

[34] *Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, at *3 (M.D. La. Jan. 6, 2012), and cited cases.
[35] R. Doc. 1, ¶¶ XVII - XXIII.
[36] Plaintiff's medical records from her December 2021 describe her injury as "a very small disc bulge at C3-C4 causing no spinal canal narrowing and no foraminal narrowing." R. Doc. 1-5, p. 107.
[37] R. Doc. 1, ¶ XXI. Review of Plaintiff's medical records attached to the Notice of Removal also shows: (1) that Plaintiff went to the emergency room several days after the collision, (2) that Plaintiff began treating with Total Care on August 23, 2021, where she was initially diagnosed with (a) a sprain of the lumber spine ligaments, (b) a sprain of the sacroiliac joint, (c) lumbalgia, (d) segmental dysfunction of the sacral cervical, and "pelvis and/or hip" regions, (e) a sprain of the cervical spine ligaments (acute), and continued treating at Total Care until February 5, 2022 (or

6

some of these statements are not supported by the summary judgment-type evidence attached to the Notice of Removal and, in fact, appear to be contradicted by Plaintiff's medical records.[38] Nonetheless, although filed post-removal, the parties' Joint Status Report, filed on January 20, 2023, contains some information bearing on the amount in controversy at the time of removal.[39] It states: (1) that Plaintiff has undergone two cervical ESIs at C6-7 with Dr. Turnipseed on March 15, 2022 and August 23, 2022; (2) that Plaintiff's "treatment with Dr. [] Turnipseed is ongoing"; and (3) that "[i]t is anticipated that [she] will need medical treatment in the future."[40] Additionally, although it is less clear as to whether these expenses were incurred pre- or post-removal, the Joint Status Report indicates that Plaintiff's "[t]otal medical to date [are] $22,978.50."[41]

Regardless, while the Notice of Removal and Plaintiff's medical records present *some* facts with respect to Plaintiff's injuries and damages, this information is insufficient to establish that the amount in controversy likely exceeds $75,000, exclusive of interest and costs. All told, the injuries Plaintiff relates to the collision appear to be neck and back pain, including a "very small disc

---

about five and one-half months total); (3) that Plaintiff self-reported that she did not lose consciousness, nor was she "dizzy, dazed, or disoriented," because of the collision, and that she was able to "walk unaided" after the collision; (4) that on September 15, 2021 (about one and one-half months post-collision), Plaintiff's doctor reported an "overall decrease in [Plaintiff's symptoms] and [that she was] able to do greater activity without aggravating [her] pain"; (5) that Plaintiff's records from Total Care shows that she responding well to treatment and generally experiencing "less pain [] and feeling better" until she reached "maximum chiropractic improvement" and was "dismissed from active care" on February 2, 2022; (6) that she was referred for a lumbar and cervical MRI on November 16, 2021, and her lumbar MRI was "normal" and did not show any bulges or herniations; (7) that Plaintiff was seen by Dr. Joseph Turnipseed on January 19, 2022, where she was diagnosed with "neck pain with radiating symptoms along the left upper extremities despite conservative measures" and "cervical disc bulging" for which he "discussed the cervical steroid injection" with Plaintiff, who indicated that she "wish[ed] to consider…and will let him know"; and (7) that as of February 5, 2022, Plaintiff had "seen the specialist & decided not to get the injection." R. Doc. 1-5, pp. 10-12, 13, 37, 72-75,87-91, 101-103, 111; R. Doc. 1-6.

[38] *See, e.g.*, R. 1-5, pp. 11-12 (February 5, 2022 report from Total Care Injury & Pain Centers noting that Plaintiff "has seen the specialist & decided not to get the injection"). Notably, there is no summary judgment-type evidence submitted with the Notice of Removal showing that Plaintiff received an epidural steroid injection ("ESI") for her injuries.
[39] R. Doc. 11.
[40] R. Doc. 11, p. 2.
[41] R. Doc. 11, p. 3.

7

bulge."[42] For these injuries, Plaintiff has treated for about seventeen months (as of the filing of the Joint Status Report)[43] and has undergone two ESIs. But, despite nearly a year and one-half of treatment, Plaintiff's incurred medical expenses are under $23,000. Further, Plaintiff's medical records—and the record as a whole—contain little information about Plaintiff's prognosis and recommended future treatment other than that it is "ongoing" and "anticipated that [Plaintiff] will need medical treatment in the future." Bulging discs, even treated with steroid injections, have been held insufficient to establish the amount in controversy;[44] and whether even a herniated disc could satisfy the amount in controversy "often turns on whether surgery is recommended.'"[45] "Accordingly, courts have found the lack of a recommendation for surgery to be significant in determining whether a plaintiff seeking damages including those for a herniated disc meets the amount in controversy requirement when balanced with other factors in the record."[46] Critically,

---

[42] *See* R. Doc. 1-5, p. 107 ("Impression [from cervical MRI]: There is a *very small disc bulge* at C3-C4 causing no spinal canal narrowing and no foraminal narrowing.").

[43] Plaintiff's medical records indicated that she underwent conservative, chiropractic treatment at Total Care from August 2021 to February 2022 (about five and one-half months) before being released from active care, and that she treated with Dr. Turnipseed in January 2022, March 2022, and August 2022 (although the exact nature, duration, and frequency of the treatment is unspecified/undocumented, despite the parties' representation that treatment is "ongoing").

[44] *See Shelton v. Hallmark Trucking Ins. Co.,* No. 17-1683, 2018 WL 1998341, at *4 (M.D. La. Mar. 27, 2018), report and recommendation adopted sub nom., *Shelton v. Hallmark Specialty Ins. Co.,* No. 17-01683, 2018 WL 1997543 (M.D. La. Apr. 27, 2018): "[A] general review of quantum cases demonstrates that general damages awards for multiple bulging discs often (if not more often than not) do not exceed $30,000-$45,000, even where the plaintiff is actually treated with steroid injections," citing *Cole v. Mesilla Valley Transportation*, No. 16-841, 2017 WL 1682561, *5 (M.D. La. March 14, 2017) (citations omitted).

[45] *Thomas v. Louis Dreyfus Commodities, LLC,* No. 15-394, 2016 WL 1317937, at *4 (M.D. La. Mar. 11, 2016), report and recommendation adopted, No. 15-394, 2016 WL 1337655 (M.D. La. Apr. 1, 2016), citing *Robinson v. Kmart Corp.*, No. 11–12, 2011 WL 2790192, at *4, n. 4 (M.D. La. Apr. 28, 2011), report and recommendation adopted, 2011 WL 2937952 (M.D. La. July 14, 2011)). Accordingly, courts have found the lack of a recommendation for surgery to be significant in determining whether a plaintiff seeking damages including those for a herniated disc meets the amount in controversy requirement when balanced with other factors in the record. *See, e.g., Hebert v. Hanco Nat. Ins. Co*., No. 07–362, 2009 WL 255948, at *4-5 (M.D. La. Feb. 3, 2009) (amount in controversy not satisfied where plaintiff "suffers from a herniated disc, without any recommendation for surgery" and the plaintiff "continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish"); *Espadron v. State Farm Mut. Auto. Ins. Co.,* No. 10–53, 2010 WL 3168417 (E.D. La. Aug. 9, 2010) (amount in controversy not satisfied where plaintiff in car crash suffered a "herniated cervical disc [or] segmental cervical instability" and a "herniated lumbar disc [or] segmental lumbosacral instability" and was a "potential surgical candidate" and plaintiff stipulated that his damages did not exceed $50,000).

[46] *Thomas,* 2016 WL 1317937 at *4: "*See, e.g., Hebert v. Hanco Nat. Ins. Co*., No. 07–362, 2009 WL 255948, at *4–5 (M.D. La. Feb. 3, 2009) (amount in controversy not satisfied where plaintiff 'suffers from a herniated disc, without

as Ahlberg tacitly acknowledges,[47] there is no surgical recommendation in the record for Plaintiff (nor, as best the Court can tell from the record, even a recommendation for future injections).

Without a surgical recommendation, or any specific information about Plaintiff's recommended future treatment (other than that it is "anticipated" she will need future medical treatment), Plaintiff's injuries and treatment, even as documented in the summary judgment-type evidence submitted in support in removal, are not of the severity required to establish that her damages likely meet the jurisdictional threshold, particularly considering that Plaintiff's documented past medical expenses for twenty months of treatment amount to only $22,978.50.[48] There is ample authority from this Court and others in this Circuit, that removing defendants failed to establish the jurisdictional threshold when alleging similar injuries, treatment, and medical expenses.[49]

---

any recommendation for surgery' and the plaintiff 'continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish'); *Espadron v. State Farm Mut. Auto. Ins. Co.,* No. 10–53, 2010 WL 3168417 (E.D. La. Aug. 9, 2010) (amount in controversy not satisfied where plaintiff in car crash suffered a 'herniated cervical disc [or] segmental cervical instability' and a 'herniated lumbar disc [or] segmental lumbosacral instability' and was a 'potential surgical candidate' and plaintiff stipulated that his damages did not exceed $50,000). There is no evidence in the record that Plaintiff's physicians have recommended him to undergo surgery for his bulging discs."

[47] *See* R. Doc. 1, ¶ XXII (directing the Court to "[g]eneral damage awards for cervical spinal disc injuries *that do not require surgical intervention*…" (emphasis added)).

[48] R. Doc. 10, pp. 2, 5; R. Doc. 13, pp. 2-3.

[49] *See, e.g., Snearl v. Crete Carrier Corp.* No. 21-266, 2021 WL 5817453 (M.D. La. Nov. 22, 2021), report and recommendation adopted, 2021 WL 5811966 (Dec. 7, 2021) (remanding case to state court for failure to establish the amount in controversy despite defendants' argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, based on plaintiff's injury and damages allegations; information in plaintiff's medical records, including that she "suffered, and continues to suffer from, neck and back pain, with radicular right leg pain; that she has undergone injections to her lumbar spine, including an epidural steroid injection and two medial branch blocks; and that she has received at least one lumbar radiofrequency ablation"; and incurred medical expenses totaling $28,281.20 over the course of more than one year of treatment with an orthopedic spine surgeon and pain management physician); *Johnson v. Petsmart, Inc.*, No. 16-3448, 2017 WL 360265 (E.D. La. Jan. 25, 2017) (remanding case to state court for failure to establish the amount in controversy despite defendants' argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, based on plaintiff's injury and damages allegations, including that he suffered injuries to his neck, back, head, and other body parts as a result of a slip and fall; incurred medical expenses totaling "almost $20,000," which does not include EMS bills, pharmacy bills, or specialist provider bills; and plaintiff's failure to stipulate that his damages do not exceed $75,000); *Witchen v. Churchill Downs, Inc.*, No. 16-12356, 2016 WL 4751794 (E.D. La. Sept. 12, 2016) (remanding case to state court for failure to establish amount in controversy despite defendant's argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, because of plaintiff's injury and damages allegation; information in plaintiff's medical records and discovery responses showing that she suffered a broken femur and fractured hip, underwent surgery at the emergency room, was hospitalized for fifteen days, experienced and treated for complications arising from the surgery, treated with physical and occupational

The summary judgment-type evidence submitted by Ahlberg relating to Plaintiff's injuries reflects about $4,000 in medical expenses—$23,000 if the statements in the Joint Status Report are considered—incurred over nearly a year and one-half of treatment, which includes two ESIs, but this type of conservative treatment does not meet the jurisdictional threshold.[50] Furthermore, while the Petition demands "lost wages/earnings,"[51] there is no evidence of the amount of Plaintiff's lost wages or inability to work, how many days of work she missed, if any, or whether she is working/can work. Likewise, there is no evidence of the "disfigurement and disability" Plaintiff claims she sustained because of the collision.[52] Further, there is also no evidence of any discovery responses, a settlement demand, or other relevant documents that would bear on the amount in controversy.[53] While the Petition does contain a jury demand, which supports that

---

therapists, and incurred "at least $22,998.08 in medical expenses"; and plaintiff's failure to stipulate that her damages do not exceed $75,000 and failure to include an Article 893 statement in her petition); *Aldrich v. DBP Holding Corp.*, No. 13-5729, 2014 WL 2215707 (E.D. La. May 28, 2014) (remanding case to state court for failure to establish the amount in controversy despite defendants' argument that plaintiff's claims exceeded $75,000, exclusive of interest and costs, based on plaintiff's injury and damages allegations; incurred "medical expenses total[ing] in excess of $20,000" at the time of removal, a "quantum study of seven allegedly similar cases in which general damages ranged from $50,000 to $150,000"; plaintiff's failure to stipulate that her damages did not exceed $75,000; and an e-mail from plaintiff's counsel stating that the amount in controversy is "greater than 75000 [sic].").

[50] *See* fn. 49, *supra*.

[51] R. Doc. 1-2, ¶ 9(f). Notably, although the Petition purportedly makes a claim for "property damages," the Petition also states that the vehicle driven by Plaintiff at the time of the collision was owned by "Musa Rahman," so it is not clear whether Plaintiff can assert a property damage claim related to that vehicle and there is no other information in the record suggesting that any of Plaintiff's property was damaged. *See* R. Doc. 1-2, ¶¶ 2 & 9(g).

[52] Even allegations of permanent disability, standing alone with no specification as to the affected body part(s), do not establish that a plaintiff's claims are likely to satisfy the amount in controversy requirement. *See Heaverlo v. Victoria's Secret Stores, LLC*, No. 07-7303, 2008 WL 425575, at *3 (E.D. La. Feb. 8, 2008) ("Although Mrs. Heaverlo alleges permanent disability, that allegation is not sufficient for the Court to retain this case. In *Palmer v. Wal–Mart Stores, Inc.*, No. Civ. A. 95–1723, 1996 WL 20862, at *1 (E.D. La. Jan. 17, 1996), the court granted plaintiff's motion to remand even when plaintiff alleged that she sustained severe and possibly permanent injuries, because her allegations were 'fairly 'vanilla' ' and did not reveal the extent of her injuries. Mrs. Heaverlo's allegations are similarly commonplace. Given the accident described in the petition and the lack of evidence as to plaintiffs' likely damages, the Court finds that defendants have not satisfied their burden of showing by a preponderance of the evidence that more than $75,000 was in controversy at the time of removal.").

[53] To the extent Ahlberg suggested that Plaintiff's medical and billing records attached to the Notice of Removal are incomplete or "limited" or that there are other pre-removal documents bearing on the amount in controversy (*see, e.g.*, R. Doc. 1, ¶ XXI & n. 13), it is Ahlberg's obligation to obtain/discover these documents before effecting removal. Indeed, as one court noted, "[i]f the removing defendant does not have facts sufficient to support removal when the original petition is received, it is the removing defendant's responsibility to discover those facts *before* effecting removal. That is precisely why the 'other paper' removal rule exists, to ensure that removals will not be filed 'before their factual basis can be proven [by the removing defendant] by a preponderance of the evidence.'" *Bonvillian v. National Liability & Fire Ins. Co.*, No. 16-1708, 2017 WL 892311, at *3 (W.D. La. Feb. 1, 2017), quoting *Bosky v.*

Plaintiff seeks more than $50,000.00, that also is not sufficient to establish that her damages likely exceed $75,000, exclusive of interests and costs.[54]

Ahlberg also directs the Court to several Louisiana state court cases where "general damages awards for cervical spinal disc injuries that do not require surgical intervention can range from $75,000 to $150,000,"[55] to support his argument that Plaintiff's claims meet the amount in controversy requirement even without a surgical recommendation. While the damage awards in

---

*Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002)). The Fifth Circuit has repeatedly cautioned against protective removals and has established timing rules that allow a defendant to engage in discovery regarding the amount in controversy before filing a notice of removal. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 162 (5th Cir. 1992); *Mumfrey v. CVS Pharmacy, Inc.,* 719 F.3d 392, 400 (5th Cir. 2013); *Bosky*, 288 F.3d at 211.

[54] R. Doc. 1-2, ¶ 11. Although not raised by Ahlberg, Plaintiff's request for a trial by jury in the Petition is also not sufficient to establish the amount in controversy. *See* La. C.C.P. art. 1732 ($50,000 threshold for jury trials); *see also Cummings v. Winn-Dixie Montgomery, LLC,* No. 15-195, 2015 WL 4772185, at *3 (M.D. La. Aug. 12, 2015), citing *Brown v. Richard*, No. 00-1982, 2000 WL 1653835, at *4 (E.D. La. Nov. 2, 2000) ("jury demand for state court can be a factor in determining whether the amount in controversy requirement for federal jurisdiction is satisfied" but alone is not controlling to satisfy the jurisdictional requirement); *Johnson v. Sullivan Transfer Co.,* No. 97-0239, 1997 WL 256639, at *3 (E.D. La. May 14, 1997) ("While it is true there is a jury demand, that no longer provides 'proof' of an amount in controversy sufficient to meet the requirements for diversity jurisdiction in federal court as the amount in controversy must be $25,000 more than the $50,000 required for a jury demand under Louisiana procedural law.") Here, Plaintiff's Petition simply indicates that she is seeking at least $50,000 in damages, which is not dispositive of whether her claims likely exceed $75,000, exclusive of interest and costs.

[55] *See* R. Doc. XXII. Even if the Court were to consider the cases relied on by Ahlberg, those cases are still insufficient to establish the amount in controversy here as they are distinguishable, especially considering the limited information about Plaintiff's injuries, prognosis, and treatment in the record. A cursory review of those cases shows that those plaintiffs had much longer and/or more extensive treatment histories than Plaintiff, incurred more medical expenses, and/or suffered from additional injuries that are not present here, and, in any event, those awards were made by a judge or jury *after a full trial on the merits*. *See, e.g., Hebert v. Boesch*, 194 So.3d 798 (La. App. 1 Cir. 6/3/16) (plaintiff, who (a) sustained injuries to his "back, neck, and shoulders," including two bulging discs and cervical radiculopathy, and for which he testified at trial that "he had never suffered" before the accident; and (b) treated "sporadic[ally] and conservative[ly]" with his primary care physician, a chiropractor, and an orthopedic surgeon, who recommended "epidural steroid injections in [plaintiff's] spine," but plaintiff declined, was awarded $75,000 in general damages, plus $15,290.98 in past medical expenses and $262.50 in lost wages, after a bench trial); *Peoples v. Fred's Store of Tennessee, Inc.*, 2009-1270 (La. App. 3 Cir. 6/2/10), 38 So.3d 1209 (plaintiff, who treated with several doctors over the course of several years for shoulder and cervical injuries; underwent (a) "several steroid injections" in and surgery on her right shoulder and (b) steroid injections to her neck, which did not offer much relief; received a recommendation for surgery "to insert metal plates in her neck to relieve the pressure"; and received/used a Transcutaneous Electrical Nerve Stimulation (TENS) unit pending surgery, was awarded general damages of $55,000 for her shoulder injury and $85,000 for her cervical injury); *Hoang v. Thornton Services, Inc.*, No. 2015-0749 (La. App. 4 Cir. 4/27/16), 192 So.3d 864 (although the court's opinion contains little information about plaintiff's exact injuries and treatment, it can be gleaned that plaintiff suffered "various levels of cervical disc" injury after colliding with a dump trump, treated conservatively with several medical providers, including neurosurgeons, but never received a surgical recommendation, and that a *jury* awarded plaintiff over $500,000 in past and future lost wages, $50,000 in past and future pain and suffering, $50,000 in past and future mental anguish, and $100,000 for loss of enjoyment of life *after a full trial on the merits*, where the jury had the benefit of hearing testimony from plaintiff, plaintiff's neighbors, and plaintiff's expert, among others (emphasis added)).

those cases exceed $75,000, those cases are not persuasive at this stage of the litigation, as there cannot be a meaningful comparison of this case to any of those cases (which are also factually distinguishable) for the purposes of determining whether the jurisdictional threshold is met because the relevant information regarding Plaintiff's injuries and damages are unknown.[56] "[A] simple recitation of cases where plaintiffs have been awarded damages that would exceed the federal jurisdictional amount are not sufficient to establish the amount in controversy." Rather, Ahlberg, as the removing defendant, "must point to facts **in this case** that establish that the actual amount in controversy exceeded $75,000,"[57] and he has not done so.[58]

### III.  RECOMMENDATION

Federal courts are to presume that cases lie outside their jurisdiction, such that any doubt about the existence of subject matter jurisdiction is resolved in favor of remand.[59] Even if he were permitted to clarify his own citizenship,[60] the amount in controversy is not facially apparent from

---

[56] *See Silva,* 2016 WL 4501288, at *5: "Overall, Defendant's argument that the amount in controversy is satisfied by citing two Louisiana state court cases with highly individualized facts different from the facts at issue here is unconvincing. Because the fact finder has discretion in determining an appropriate amount of damages based upon the facts of each individual case, monetary awards in previous cases are not sufficient to meet Defendant's burden of establishing that the amount of controversy here is greater than $75,000. The Defendant must point to facts in this case that establish that the actual amount in controversy exceeded $75,000. Moreover, the damages awards cited by Defendant are based on the entire record after trial, whereas subject matter jurisdiction determinations must only be based on the jurisdictional facts that exist at the time of removal. This point is especially salient when the Plaintiff's particular alleged injury cannot be broadly generalized and compared across different plaintiffs with 'similar' injuries, and when such an injury can result in widely ranging damages awards that do not always satisfy the amount in controversy requirement."
[57] *Id.* (emphasis added).
[58] Plaintiff's failure to include a La. Code Civ. P art. 893 allegation in her Petition that her damages do not exceed $75,000 is also not sufficient to establish the amount in controversy. There is ample authority from this Court and others within this Circuit holding that, while the failure to include an Article 893 is entitled to some consideration, it is not dispositive of the amount in controversy.  In any case, even affording some weight to Plaintiff's failure to include an Article 893 allegation in her Petition, that action (or inaction) is not sufficient to sustain Plaintiff's burden, in light of the low amount of Plaintiff's medical expenses at the time of removal for over a year and one-half of conservative treatment, including two ESIs but no surgical recommendation, with no evidence of the extent or cost of future treatment, if any, and no evidence of lost earnings or other non-medical expenses.
[59] *Howery v. Allstate Ins. Co*., 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted); *Gasch*, 491 F.3d at 281-82. *See also Manguno*, 276 F.3d at 723 ("[A]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.").
[60] 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

12

the Petition and, despite the summary judgement-type evidence submitted with the Notice of Removal (and even considering the additional information the Joint Status Report), Ahlberg has not met his burden of proving by a preponderance of the evidence that the amount in controversy likely exceeds $75,000, exclusive of interest and costs.[61] Accordingly,

**IT IS RECOMMENDED** that this matter be **REMANDED** to the Twenty-Third Judicial District Court for the Parish of Ascension, State of Louisiana for lack of subject matter jurisdiction.

Signed in Baton Rouge, Louisiana, July 31, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[61] "Because Ahlberg has not shown by a preponderance of the evidence that the amount in controversy likely exceeds the jurisdictional amount, the Court has no need to consider whether Plaintiffs can show to a legal certainty that they will not be able to recover in excess of that amount." *Medina v. Allstate Vehicle and Property Insurance Company,* 458 F. Supp. 3d 591, 601 (W.D. Tex. May 1, 2020).